# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CAUSE NO.: 1:06-CV-33-TS |
| ESTATE OF BEVERLY ZINSMASTER, DECEASED, et al., ) ) ) | |
| Defendants. ) _____ ) ) | |
| PARKVIEW HOSPITAL, INC., ) ) | |
| Counter-Claimant, ) ) | |
| v. ) ) | |
| CAROLINA CASUALTY INSURANCE COMPANY, ) ) ) | |
| Counter-Defendant. ) _____ ) ) | |
| PARKVIEW HOSPITAL, INC., ) ) | |
| Cross-Claimant, ) ) | |
| v. ) ) | |
| NATIONWIDE INSURANCE COMPANY, MARGARITA R. KARPOV, THE ESTATE OF DIMITRY KARPOV, NET TRUCKING, INC., and STANISLAW GILL, ) ) ) ) ) ) | |
| Cross-Defendants. ) | |

**AMENDED OPINION AND ORDER**

On August 21, 2005, Stanislaw W. Gill, the driver of a Net Trucking tractor-trailer unit, caused a chain reaction collision on Interstate 80/90, the Indiana toll road. At the time of the accident, Net Trucking and Gill were insured by Carolina Casualty Insurance Company. The accident has given rise to four wrongful death claims and numerous injury and property damage claims against the motor carrier and its insurer.

The Intervenor Plaintiff, Carolina Casualty, brings this statutory interpleader claim against the Defendants pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. All the Defendants, with the exception of Net Trucking and Gill, have made claims arising out of the accident against Carolina Casualty's insurance coverage. On March 6, 2006, Carolina Casualty deposited $1 million with the Clerk of Court's registry as the maximum amount due under the terms and provisions of the insurance policy.

This matter is before the Court on motions for partial summary judgment regarding the amount of coverage provided by Carolina Casualty's insurance policy. Certain of the Defendants request that the Court enter an order that the insurance policy provides the federally required minimum amount of $750,000 to satisfy "each final judgment" for injury or death due to motor carrier negligence. (DE 193 at 1; DE 199 at 1–2; DE 200 at 1; DE 201 at 1). Carolina Casualty contends in its cross motion for partial summary judgment that it is undisputed that the limit of its liability for the accident, under policy number CTP343015, is $1 million.

**BACKGROUND**

On February 1, 2006, the Plaintiff, Carolina Casualty Insurance Company, filed a statutory interpleader action against the Defendants: Estate of Beverly Zinsmaster, deceased; Tammy Luce, Personal Representative of the Estate of Beverly Zinsmaster; Estate of Phillip Eugene Zinsmaster, deceased; Tammy Luce, Personal Representative of the Estate of Phillip Eugene Zinsmaster; Estate of Joan Aubut, deceased; Dana Tidwell, Independent Administrator of the Estate of Joan Aubut; Estate of Dimitry Karpov, deceased; Margarita R. Karpov, as Administratrix of the Estate of Dimitry Karpov; Margarita R. Karpov, Individually; Judith Ann Flis; Stells Flis; Melinda Jacob; Marcy Rae Leone; Angela Butler; Melissa Anne Boehler; Lori Anne Stolisov; Lindsey Williams; Kenneth Williams; AAA Auto Insurance of Michigan; Indiana Department of Transportation (IDOT Toll Road District Granger, Indiana); Parkview Hospital Fort Wayne Indiana; Nationwide Insurance Company; The St. Paul Travelers Insurance Companies, Inc.; Sate Farm Insurance Company; USAA (United Services Automobile Association); Sunpro; Net Trucking, Inc.; and Stanislaw Gill. In its Complaint, Carolina Casualty alleged that the maximum amount due under the terms and provisions of the insurance policy for the August 21, 2005, accident was $1 million.

On April 24, 2006, Carolina Casualty moved to amend its Complaint to add defendants who had filed suit against Stanislaw Gill and Net Trucking in Illinois for injuries and damages sustained as a result of the August 21, 2005, accident and to properly identify Patricia Phelps, instead of Tammy Luce, as the personal representative of the Thomas and Phillip Eugene Zinsmaster Estates. The Amended Complaint added Defendants Patricia Phelps, individually and as personal representative of the Estate of Phillip E. Zinsmaster, deceased; Thomas Zinsmaster;

3

Wendalyn Huckendubler; and Jackie Baker. A Second Amended Complaint, filed on June 28, 2006, added Moore's Service and Towing and Per-Se Technologies Incorporated Insurance Benefit Plan as defendants.

The Defendants answered and Defendant Parkview Hospital filed a crossclaim against the Estate of Dimitry Karpov, Margarita R. Karpov as Administratrix and Individually, Nationwide Insurance, Net Trucking, and Gill, and filed a counterclaim against Carolina Casualty. On May 5, 2006, Carolina Casualty answered Parkview's counterclaim. On May 8, Nationwide answered Parkview's crossclaim. On May 11, the Estate of Dimitry Karpov and Margarita Karpov answered the crossclaim and on May 23, Net Trucking answered the crossclaim. On June 28, Gill answered Parkview's crossclaim.

On August 7, 2006, Carolina Casualty moved to dismiss the Indiana Department of Transportation without prejudice, which the Court granted on August 8.

On August 23, 2006, Defendants Phelps, Huckendubler, Baker, Thomas Zinsmaster, and Phillip Eugene Zinsmaster filed a motion for partial summary judgment as to the amount of coverage provided by the Carolina Casualty insurance policy. They requested that the Court enter an order that $750,000, which was the federally required minimum amount of coverage, was available under the insurance policy to satisfy "each final judgment" for injury or death due to motor carrier negligence. (DE 193 at 1.) On September 28, Defendants Aubut, Tidwell, Beverly Zinsmaster, and Tammy Luce filed a Notice of joinder in the pending motion for partial summary judgment. On September 29, Defendants Karpov and Flis filed a motion for partial summary judgment on the same insurance coverage issue.

On October 16, Carolina Casualty responded in opposition and filed its own motion for

4

partial summary judgment arguing that the limit of its liability under the insurance policy at issue is $1 million. (DE 205 at 1.)

On November 3 and 6, the Defendants who moved for partial summary judgment filed briefs in opposition to Carolina Casualty's Motion for Partial Summary Judgment. These briefs were also considered replies to their own Motions. On November 13, Carolina Casualty filed a reply to the Defendants' opposition and the matter became ripe for this Court's ruling on the cross motions for partial summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When there are no genuine issues of material fact and the dispute primarily concerns a question of interpreting a statute and applying it to a specific set of facts, the issue is properly resolved on a motion for summary judgment. *LTV Steel Co., Inc. v. Northwest Engineering & Constr., Inc.*, 41 F.3d 332, 334 (7th Cir. 1994).

## STATEMENT OF FACTS

On August 21, 2005, Stanislaw Gill was driving a tractor-trailer unit for Net Trucking. The tractor-trailer and five private automobiles were involved in an accident on Interstate 80/90 in Indiana. The accident resulted in four deaths, numerous personal injuries, and property damage to the privately-owned automobiles and to the Indiana Toll Road.

5

Net Trucking and Gill were insured by Carolina Casualty under policy number CTP343015. The policy had a $1 million cap on liability, regardless of the number of claims or vehicles involved in an accident. The policy included an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," known as a Form MCS-90 Endorsement. The endorsement indicated that policy number CTP343015 was Net Trucking's primary insurance and stated that Carolina Casualty "shall not be liable for amounts in excess of $1,000,000 for each accident." (Cplt., Ex. A at 24). An accident was defined as including "continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended." (Cplt., Ex. A at 24). The MCS-90 also provided:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy.

(*Id.*)

## DISCUSSION

An MCS-90 Endorsement is a federally mandated endorsement to motor carrier insurance policies. *See* 49 C.F.R. § 387.7(a) (directing that "[n]o motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in § 387.9 of this subpart."); 49 C.F.R. § 387.7(d) (stating that proof of the required financial responsibility consists of a Form MCS-90 issued by an insurer); 49 C.F.R.

§ 387.15 (providing an example of an approved Form MCS-90). Every insurer must use this endorsement or equivalent language. *Am. Inter-Fidelity Ex. v. Am. Re-Ins. Co.*, 17 F.3d 1018, 1021 (7th Cir. 1994). Submitting the endorsement indicates that a commercial motor carriers is in compliance with the federal financial responsibility requirements issued by the Secretary under the Motor Carrier Act of 1980. The minimum level of financial responsibility for interstate carriers of nonhazardous property is $750,000. 49 C.F.R. § 387.9 (containing the Schedule of Limits for Public Liability); 49 U.S.C. § 31139(b) (setting the minimum level of financial responsibility that the Secretary must prescribe in its regulations at $750,000).

By this endorsement the insurer promises to pay the full judgment up to the regulatory minimum. *Am. Inter-Fidelity Ex.*, 17 F.3d at 1021 (citing *Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.*, 868 F.2d 357 (10th Cir.1989)). However, the insurer's obligation under the MCS-90 is one of "suretyship" which is triggered when the policy to which it is attached provides no coverage to the insured. *See T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001); *see also Canal Ins. Co. v. Carolina Cas. Ins. Co.*, 59 F.3d 281, 283 (1st Cir. 1995) (considering the endorsement "to be, in effect, suretyship by the insurance carrier to protect the public—a safety net [that] covers the public when other coverage is lacking"). "A contract providing $700,000 of insurance after the client pays a deductible of $50,000, but (because of the endorsement) requiring the carrier to pay as much as $750,000 to an injured person, is best understood as $700,000 of insurance plus a surety bond of $50,000." *Am. Inter-Fidelity Ex.*, 17 F.3d at 1022.

The Defendants' position is that the MCS-90 endorsement attached to the Carolina Casualty policy setting a $1 million limit for "each accident" is not controlling because it is

7

contrary to the statutory requirement that security must be at least $750,000 "for each final judgment." *See, e.g.,* DE 210 at 2 ("Regardless of how clear a policy's stated coverage limits are, any limit that contradicts statutorily mandated minimums is unenforceable and void in favor of the statutory requirement.") That is, each of the injured parties may receive up to the statutory minimum of $750,000, despite the fact that the policy limit is $1 million. The Defendants rely on the following section of the Motor Carrier Act in support of their claim.

> (1) Liability insurance requirement.—The Secretary may register a motor carrier under section 13902 only if the registrant files with the Secretary a bond, insurance policy, or other type of security approved by the Secretary, in an amount not less than such amount as the Secretary prescribes pursuant to, or as is required by, sections 31138 and 31139, and the laws of the State or States in which the registrant is operating, to the extent applicable. The security must be sufficient to pay, not more than the amount of the security, *for each final judgment* against the registrant for bodily injury to, or death of, *an individual* resulting from the negligent operation, maintenance, or use of motor vehicles, or for loss or damage to property (except property referred to in paragraph (3) of this subsection), or both.

49 U.S.C. § 13906(a)(1) (emphasis added).

This same argument was made, unsuccessfully, by the plaintiffs in a multiple car, multiple victim accident in *Hamm v. Canal Insurance Co.*, 10 F. Supp. 2d 539 (M.D.N.C. 1998). The plaintiffs in *Hamm* emphasized the same portion of the statute that the Defendants do here: "The security must be sufficient to pay, not more than the amount of the security, for each final judgment and against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation . . . of motor vehicles." 49 U.S.C. § 13906(a)(1). The plaintiffs argued that the reference to "each final judgment" (as well as reference to "any final judgment" in the MCS-90 Endorsement) obligated the defendant to pay at least the statutory minimum for any judgment that arose out of the separate claims asserted by any of the nine plaintiffs involved in

8

the underlying accident. 10 F. Supp. 2d at 543. The court considered the language of both the statute and the MCS-90 endorsement separately and concluded that the defendant's potential liability was limited to $1 million as set forth in the policy regardless of the number of victims involved. The court addressed the statutory language first:

> With respect to the statute, it provides that "the security must be sufficient to pay, *not more than the amount of the security*." 49 U.S.C. § 13906(a)(1) (emphasis added). The clear meaning of this statement is that whatever amount is to be paid will not exceed the amount of the security which has been established by the statute or by the policy itself. This would mean that if the actual amount of the security is the minimum required by the statute, then the limit of potential liability for an insurer would be $750,000. However, if as in this case, the insured voluntarily elects to obtain security in a larger amount, such as $1 million, then that amount becomes the limits of potential liability for the insurer for claims resulting from a single accident.

*Hamm*, 10 F. Supp. 2d at 544.

The bottom line is that the MCS-90 endorsement "does not create additional liability limits under the policy. Thus, when the declarations page provides for limits of liability of $1 million per occurrence and the MCS-90 endorsement states that the limit of liability is $1 million per accident, the policy limits are for only $1 million." *Recent Developments in Commercial Transportation Litigation*, 34 Tort & Ins. L.J. 283, 293–94 (Winter 1999) (citing *Hamm*). This Court agrees with the summary of *Hamm* that appears in the cumulative supplement of the Federal Procedure, Lawyer's Edition:

> [The] Provision of Motor Carrier Act requiring security sufficient to pay, not more than the amount of the security, for each final judgment means that amount to be paid by motor carrier's liability insurer will not exceed the amount of the security which has been established by the statute or by the policy itself; [the] statute does not require payment of at least the minimum statutory security for each final judgment.

32 Fed. Proc., L. Ed. § 76:505 (Cum. Supp. 2006). Put another way, an insurance company

9

issuing an endorsement is liable for each final judgment arising out of the motor carrier's negligence, but only to the extent those judgments do not exceed the amount of the security. The amount of the security, in turn, cannot be below $750,000. The Secretary of Transportation will not register a motor carrier that has insufficient security. 49 U.S.C. § 13902(a)(4).

The Defendants maintain that there has not been a court opinion that has construed the language of the statute "separately from the language of the policies or from language of the endorsement." (DE 211 at 2.) Although no court has undertaken a dictionary dissection of "each final judgment," it is not accurate to say that the *Hamm* court did not construe the language of the statute. That court concluded that, according to 49 U.S.C. § 13906(a)(1), an insurance company providing an endorsement will not be liable for more than the security that is established by statute or by its insurance policy, if it provides for coverage above the statutory requirement. In contrast, the Defendants have not pointed to a single case that supports their interpretation of the statute.

The Court must now look to the endorsement and the policy to determine the limits of liability. In this case, there is no dispute that Carolina Casualty's liability is capped at $1 million for each accident, regardless of the number of claims or vehicles involved in the accident. (DE 207, Ex. A, Ex. B, Ex. C.) Defendants Phelps, Thomas Zinsmaster, Huckendubler, and Baker "admit that the language of the policy and the language of the endorsement provide for coverage of only $1,000,000 per occurrence." (DE 211 at 2). Because the Defendants rely on an erroneous interpretation of the statute, their arguments that the policy and the endorsement conflict with statutory requirements, and that the Secretary exceeded its statutory authority when it issued regulations requiring $750,000 of insurance coverage per accident rather than for each final

10

judgment, both fail.[1]

The MCS-90 endorsement makes an insurance company liable for final judgments recovered against the insured for public liability resulting from negligent operation of the insured's motor vehicle, whether or not that vehicle is named in an insurance policy. In this case, that level of liability is $1 million.

## CONCLUSION

For the foregoing reasons, the Motions for Partial Summary Judgment [DE 193, 199, 200, 201] filed by the Defendants are DENIED and the Motion for Partial Summary Judgment filed by the Plaintiff [DE 205] is GRANTED. Carolina Casualty's liability under policy number CTP343015, for the accident involving its insured on August 21, 2005, is $1 million. This Opinion and Order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the Order may materially advance the ultimate termination of the litigation. The proceedings in this Court are STAYED until the Seventh Circuit resolves the merits of any appeal or declines to accept such appeal.

---

[1]Even if the Court did not construe the statute as it has, it would not use a statute governing registration of motor carriers by the Secretary of Transportation to rewrite Carolina Casualty's insurance policy or the attached endorsement to provide more coverage that was bargained for. *See Ill. Cent. R. Co.v. Dupont*, 326 F.3d 665, 668 (5th Cir. 2003) (declining to automatically include endorsement in insurance policy just because it was required by statute). The statute and the regulations requiring the endorsement are directed at the motor carrier. *Id.* ("The regulations requiring the endorsement are directed at the motor carrier, not its insurer."). The Motor Carrier Act is not an insurance statute, and it is not Carolina Casualty's duty to make sure that the companies it insures comply with its provisions. *Id.* at 669. Likewise, if the Secretary erroneously registered Net Trucking (because the endorsement should not have been limited to per accident coverage) its mistake would not obligate Carolina Casualty to pay monies it did not contract to pay.

11

SO ORDERED on February 27, 2007.

                                         s/ Theresa L. Springmann  
                                        THERESA L. SPRINGMANN  
                                        UNITED STATES DISTRICT COURT  
                                        FORT WAYNE DIVISION