**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, <br> Plaintiff, <br> <br> v. <br> <br> ESTATE OF BEVERLY ZINSMASTER, DECEASED, et al., <br> Defendants. | ) ) ) ) ) ) ) ) ) ) | CAUSE NO.: 1:06-CV-33-TS |

**OPINION AND ORDER**

This matter is before the Court on Carolina Casualty Insurance Company's Motion for Summary Judgment [DE 267], filed on July 2, 2007.

**BACKGROUND**[1]

The Plaintiff, Carolina Casualty, brought this statutory interpleader claim against the Defendants pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. The Defendants were estates, individuals, or entities that had made claims for recovery arising out of an accident involving also-named Defendants Net Trucking and Stanislaw Gill. At the time of the accident, Carolina Casualty insured Net Trucking and Gill.

On March 6, 2006, Carolina Casualty deposited $1 million with the Clerk of Court's registry as the maximum amount due under the terms and provisions of the insurance policy. On January 30, 2007, this Court ruled on pending motions regarding the limits of the liability under the insurance policy, concluding that the limit of Carolina Casualty's liability was $1 million.

On August 23, 2007, the Court ordered distribution of the deposited funds in accordance

---

[1] A more detailed background can be found in this Court's Opinion and Order issued on January 30, 2007.

with a Mediation Agreement entered into by the parties on July 30, 2007. Prior to this, on July 2, Carolina Casualty moved for summary judgment against all the Defendants. Defendant Net Trucking sought leave to file a response in opposition to Carolina Casualty's Motion for Summary Judgment. Because Net Trucking's counsel had already withdrawn its representation of Net Trucking, Carolina Casualty objected to the response and sought to have it stricken. The Court denied leave to file the tendered response, but gave Net Trucking until September 21, 2007, to retain counsel and to file a response to the Motion for Summary Judgment. Defendant Net Trucking has not retained counsel and has not filed a response.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## STATEMENT OF FACTS

Carolina Casualty issued a combined single limit, $ 1 million liability policy, numbered CTP343015, to Defendant Net Trucking. On August 21, 2005, Gill, an employee of Net Trucking, was involved in an accident on the Indiana toll road. Various claims for bodily injury and property damage arose out of the accident, and the total value of all the claims exceeded $ 1 million. Carolina Casualty filed its complaint for interpleader and declaratory relief and paid its liability limits into the registry of the Court. No party opposed Carolina Casualty's right to interpleader. The parties reached a resolution of their entitlement to the interpleaded funds as set forth in a Mediation Agreement and the Court ordered distribution of the $1 million. No party opposed the distribution.

Under the "coverage" section of the insurance policy, Carolina Casualty states that it will pay all sums that it "legally must pay as damages because of 'bodily injury' or 'property damage'" to which the insurance applies and was caused by an accident involving a covered auto. (DE 267-4.) As part of its coverage, Carolina Casualty has a duty to defend Net Trucking against a suit seeking damages for bodily injury or property damage to which the insurance applies. This contractual duty to defend is not unlimited; it ends "when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." (DE 267-4.)

## DISCUSSION

Carolina Casualty submits that it is entitled to summary judgment against all the Defendants because there are no genuine issues as to any material facts with respect to its request for interpleader and that it is entitled to be discharged from any further obligations or liability

3

under the insurance policy, including the duty to defend its insureds, Net Trucking and Stanislaw Gill. Carolina Casualty argues that when it paid the $1 million into the Court's registry, it exhausted the liability coverage limit, and the contractual duty to defend ended. Because the Mediation Agreement, which led to the distribution of the $1 million, occurred after Carolina Casualty moved for summary judgment, it did not address the affect of the distribution of the funds on its duty to defend.

### A.     Choice of Law Analysis

"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits," *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir.1994)), including the state's conflict rules, *Land*, 272 F.3d at 516. Accordingly, Indiana's choice of law rules apply to this case.

> Indiana's choice of law rule for contract actions is the "most intimate contacts" test. *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App.1983); *Suyemasa v. Myers*, 420 N.E.2d 1334, 1344 (Ind. Ct. App.1981); *Dohm & Nelke v. Wilson Foods Corp.*, 531 N.E.2d 512, 513 (Ind. Ct. App. 1988). "As formulated by our supreme court, the rule has been succinctly stated as follows: 'The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact.'" *Eby*, 455 N.E.2d at 626 (quoting *W.H. Barber Co. v. Hughes*, 223 Ind. 570, 63 N.E.2d 417, 423 (1945)). Quoting the Restatement (Second) of Conflict of Laws § 188, the *Eby* court listed the factors to be considered in this test as: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. *Id.* This test and these factors apply to actions based upon insurance contracts. *See Travelers Ins. Companies v. Rogers*, 579 N.E.2d 1328 (Ind .Ct. App.1991).

*Schaffert by Schaffert v. Jackson Nat. Life Ins. Co.*, 687 N.E.2d 230, 232–33 (Ind. Ct. App. 1997)

(footnote omitted). However, a court should only undergo this analysis if there is a difference between the relevant laws of the different states. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997). "If the purposes and policies of two potential rules are the same, the forum should apply the forum law." *Id.*

Looking to the relevant contacts under Indiana's choice of law rules, Carolina Casualty argues that either Indiana or Illinois law applies. Carolina Casualty states its belief that there is no difference between Indiana and Illinois law with respect to its entitlement to be discharged under the policy, and thus, does not designate a particular state's laws as controlling.

Indeed, both Indiana and Illinois law follow the same basic rules of construction regarding insurance policies, giving unambiguous words their ordinary meaning but construing ambiguous language in favor of the insured. *See Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002); *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1101 (Ind. Ct. App. 1997); *Grzeszczak v. Ill. Farmers Ins. Co.*, 659 N.E.2d 952, 956 (Ill. 1995). They also both follow the rule that the duty to defend is broader than the duty to indemnify. *See Hoosier Ins. Co. v. Audiology Foundation of Am.*, 745 N.E.2d 300, 306 (Ind. Ct. App. 2001) ("An insurance company's duty to defend is broader than its coverage for liability or its duty to indemnify."); *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 247 (Ill. 1982) ("The general holding in this State is that an insurer's duty to defend and its duty to indemnify are separate and distinct and that the former duty is broader than the latter."). Additionally, both states recognize that an insurance company can limit its duty to defend. *See, e.g., Walton v. First Am. Title Ins. Co.*, 844 N.E.2d 143, 147 (Ind. Ct. App. 2006) (stating that if the pleadings reveal that a claim is excluded under the policy, then no defense is required); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514

5

N.E.2d 150 (Ill. 1987) (holding that contract limited insurer's duty to defend by the type of claim and to the amount of the indemnity coverage afforded under the policy). However, the more specific issue–whether depositing the policy limits to a court through an interpleader action terminates the contractual duty to defend—has met with different outcomes in each state. The Court will discuss whether these outcomes represent a different rule regarding the construction of duty to defend clauses in insurance contracts and, if so, whether the difference is outcome determinative under the facts of this case.

### B.    Analysis of Indiana and Illinois Law

The only issue remaining in this interpleader action is whether Carolina Casualty's duty to defend has been terminated by the distribution of the $1 million that was tendered to the Court. In other words, did the distribution of the policy limits through this interpleader action satisfy the contract language requiring the exhaustion of the Liability Coverage Limits by "payment of judgments or settlements."

The Seventh Circuit, applying Indiana law, recently addressed whether the duty to defend was terminated in a contract with similar language where the insurance company deposited the policy limit to the court through interpleader. In *Abstract & Title Guaranty Co. v. Chicago Insurance Co.*, 489 F.3d 808, 811 (7th Cir. 2007), the insurance contract at issue contained a duty to defend provision. The contract provided that the right and duty to defend ceased "after the applicable limit of [the defendant's] liability [had] been exhausted by the payments of judgments, settlements, Damages or Claim Expenses, as applicable." 489 F.3d at 811. Because the court could not find controlling Indiana Supreme Court precedent on the issue, it turned to

the decisions of intermediate appellate courts in the state for persuasive guidance in predicting what the highest court in Indiana would decide. *Id.* The court concluded that the contract language was not ambiguous and that after the insurer paid its limits in claim expenses by depositing funds with the court, is was under no obligation to defend or to continue to defend the plaintiff. *Id.* at 812 ("[W]e would be hard pressed to read this contract to require [the insurance company] to both defend the suits and pay to its full limits."); *see also Commercial Union Ins. Co. of N.Y. v. Adams*, 231 F. Supp. 860 (S.D. Ind. 1964) (holding that insurance company had no further duty to defend after unconditionally tendering payment up to policy limit to the court in an interpleader action). The court rejected cases from other jurisdictions that held that insurers were still required to defend insured parties above and beyond interpleading the policy limits. *Id.* at 812 ("Although the citation to those cases from other jurisdictions is informative, the cases lose much of their persuasive power in light of the recent holding in *Mahan* [*v. American Standard Insurance Co.*, 862 N.E.2d 669 (Ind. Ct. App. 2007)] where the Indiana Court of Appeals *did* allow an insurer to walk away after interpleading."). The court noted that Indiana did not have any law that prevented an insurer from interpleading the policy limit and that the insurance policy at issue did not require the insurer to defend even after the policy limits were met. *Id.* at 812–13.

Illinois, likewise, does not have any law that prevents an insurer from interpleading the policy limit and recognizes that an insurance company's duty to defend can be contractually limited in its scope. *See Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150 (Ill. 1987). However, Illinois appellate courts have held that tendering the policy limit to a court without effectuating settlement or obtaining the consent of the insured constituted a breach of the

7

insurance company's duty to defend. *See Am. Standard Ins. Co. v. Basbagill*, 775 N.E.2d 255 (Ill. Ct. App. 2002); *Douglas v. Allied Am. Ins.*, 727 N.E.2d 376 (Ill. Ct. App. 2000).

In *Douglas*, the relevant insurance policy provided that the insurance company had no obligation to the insured after the applicable limits of the policy had been "exhausted by payment." 727 N.E.2d at 380. "Exhausted by payment" was not defined in the policy. When read in conjunction with other language in the policy, payment referred to money the insurance company was "legally obligated" to pay, either by a judgment or by settlement. *Id.* The court also found support from other jurisdictions for the conclusion that exhausted by payment meant only payment "by settlement or judgment wholly depleting the policy amount, not simply paying the policy limits to the court." *Id.* at 381.

In *Basbagill*, an Illinois appellate court held that tender of interpleader money to the trial court that met the insurance policy liability limit was not sufficient to terminate the insurance company's duty to defend. Again, the court's decision focused on the fact that the insurance company's tender was conditional and did not require it to relinquish any claim to the interpleaded funds. 775 N.E.2d at 260–61 (using the definition of "payment" and "paid" to connote the satisfaction of an obligation).

These cases demonstrate that there may be a difference in the law of Indiana and Illinois regarding the affect of interpleader on the contractual duty to defend, at least where those funds have not been unconditionally tendered or distributed. In *Abstract & Title Guaranty Co.*, the court did not address whether payment of the policy limits through interpleader would have discharged the insurer's duty to defend if the "claim expenses" language was not in the contract and, instead, referred only to payment by judgment or settlement. However, the court's holding

8

that it could not read the contract to require the insurance company to pay the policy to its full limits and, at the same time, continue to defend suits could apply equally to Carolina Casualty's policy. Both Indiana and Illinois focus on whether the tender or payment is conditional, or a full surrender of the policy limits. Where, as here, the insurance company has exhausted the policy limits with no hope of retrieving the funds, any difference does not affect the outcome.

### C.        Application of Law to Carolina Casualty's Duty to Defend

The terms of Carolina Casualty's insurance policy state that its duty to defend ends when the policy limits have been "exhausted by payment of judgments or settlements." The policy limit is $1 million. Carolina Casualty deposited $ 1 million in the court's registry. And unlike the funds in *Douglas* and *Basbagill*, the interpleaded funds have not simply been tendered to the court but have been wholly depleted by the claimants' subsequent settlement and the disbursement of the funds. Absent an issue about whether interpleaded funds constitute a payment by settlement or judgment, the case looks more like *Zurich Ins. Co. v. Raymark Industries, Inc.*, a 1987 case decided by Illinois's highest court. 514 N.E.2d 150 (Ill. 1987). In *Zurich*, the court held that the insurance company's duty to defend was limited both by the type of coverage and the amount of coverage. 514 N.E.2d at 163 (holding that when insurer properly exhausted its policy limits by the payments of judgment or settlement, it was no longer obligated to defend any actions against the insured). There was no issue that the policy limits had already been exhausted by payment of judgments or settlements.

Nevertheless, the insured argued that the insurance company maintained a duty to defend it. The court explained that the scope of the duty to defend, as distinct from and broader than the

9

duty to idemnify, did not alter the conclusion that the contract did not create an independent and continuing obligation to pay the cost of defending claims against the insured "*ad infinitum*."

> The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy. The duty to defend an action brought against the insured, on the other hand, is determined solely by reference to the allegations of the complaint. If the complaint alleges facts which bring the claim within the potential indemnity coverage of the policy, the insurer is obligated to defend the action. Thus, the insurer must defend an action even though it *may not* ultimately be obligated to indemnify the insured. Where the insurer has exhausted its indemnity limits, however, the insurer *cannot* ultimately be obligated to indemnify the insured. Thus, the duty to defend is broader than the duty to indemnify only when the insurer has the potential obligation to indemnify. *But when, as here, the insurer has no potential obligation to indemnify it has no duty to defend*.

514 N.E.2d at 163 (citations omitted) (last emphasis added). Likewise, Carolina Casualty cannot be obligated to idemnify Net Trucking for claims made against it arising from the accident; the policy limits have already been exhausted. Moreover, its limits have been exhausted by payments that Carolina Casualty was legally obligated to pay through the Mediation Agreement (settlement) of the interpleader Defendants and the Court's order of disbursement—not by a unilateral tender of money that it may have never been obligated to pay or could later recoup if the claims against Net Trucking were less than $1 million. The Court notes that the settlement did not resolve any claims by the Defendants against Net Trucking, but only involved the disbursement of the available monies deposited with the Court. However, there is no suggestion in the language of the contract that all claims against Net Trucking had to be resolved, either through settlement or judgment, before Carolina Casualty would be absolved of its duty to defend. The contract only provides that its policy limits must first be exhausted by payment of settlements or judgment.

      Using either Indiana or Illinois law, Carolina Casualty is entitled to summary judgment

on its interpleader complaint.

## ORDER

For the foregoing reasons, Carolina Casualty's Motion for Summary Judgment [DE 267] is GRANTED. Carolina Casualty is fully and finally discharged from all further liability under insurance policy number CTP343015, including the duty to defend any action that has been or may be brought against any of its insured, including Net Trucking, Inc., and Stanislaw Gill, as a result of the August 21, 2005, accident. Each of the Defendants are enjoined from instituting or prosecuting further any proceeding in this cause or any other court against Carolina Casualty on account of policy number CTP343015. The Clerk will enter judgment in favor of the Plaintiff and against the Defendants.

SO ORDERED on October 30, 2007.

       s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT